UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| W.L. and M.L., individually and as parents and next friends of V.L., a minor,<br>  Plaintiff,<br><br>v.<br><br>TOWN OF SMITHFIELD, by and through its Treasurer, ROBERT SELTZER, and EILEEN CRUDELE, individually and in her capacity as Director of Special Education<br>  Defendants. | C.A. No. 1:25-cv-00001-MSM-AEM |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

The plaintiffs, W.L. and M.L., brought this action individually and on behalf of their daughter, V.L., under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq. ("Section 504"); Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. ("ADA"); and the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1 et seq. ("RICRA"). The plaintiffs claim that the Town of Smithfield and Director of Special Education, Eileen Crudele ("Director Crudele") violated V.L.'s statutory rights by failing to provide reasonable accommodations and modifications for her mental health disabilities.

Before the Court is the defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). The defendants argue that Count One fails because emotional distress damages, such as those arising from V.L.'s psychiatric hospitalization, are not

cognizable under either Section 504 or the ADA. They also argue that the plaintiffs' claim for punitive damages under RICRA fails because the plaintiffs have not alleged any conduct by the defendants that amounts to criminality.

For the reasons discussed below, the Court GRANTS the defendants' Motion to Dismiss (ECF No. 11).

## I.   BACKGROUND

The plaintiffs, W.L. and M.L., adopted their daughter, V.L., at age six. (ECF No. 1 ¶¶ 3, 4.) V.L. was removed from her biological parents' home due to neglect when she was two years old. *Id.* ¶ 4. From there, V.L. cycled through several foster placements before W.L. and M.L. adopted her. *Id.* V.L. suffers from Reactive Attachment Disorder, Generalized Anxiety Order, ADHD, and a learning disability. *Id.* ¶¶ 6, 9. Throughout her schooling, V.L. has been eligible for special education services and accommodations under the ADA, Section 504, and the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. *Id.* ¶ 10.

V.L. attended the Town of Smithfield's elementary school until fourth grade. *Id.* ¶¶ 5, 12. But she experienced bullying due to her struggles with mental health. *Id.* ¶ 11. V.L.'s parents felt that the Town of Smithfield was not providing their daughter with the environment and support needed to make educational progress. *Id.* ¶ 12. As a result, after fourth grade, V.L.'s parents enrolled her at the Wolf School, a private school that focuses on special education. *Id.* ¶¶ 12-14. While V.L. made progress at the Wolf School, she did still require support from an outside mental health counselor due to her ideations of suicide and self-harm. *Id.* ¶ 15.

2

While V.L. was finishing eighth grade at the Wolf School, her parents coordinated with Smithfield to discuss an IEP and placement for high school. *Id.* ¶¶ 16, 17. The defendants felt that V.L. could transition directly to Smithfield High School for ninth grade starting in September 2023. *Id.* ¶ 19. Unfortunately, V.L. experienced severe anxiety over the anticipated transition to Smithfield and started to engage in self-harm again. *Id.* ¶¶ 22, 23. Smithfield recommended a neuropsychological evaluation, which revealed a new diagnosis of autism spectrum disorder, without intellectual or language impairment. *Id.* ¶¶ 24, 25. V.L.'s parents felt that based on her history, recent diagnosis, and worsening mental health, Smithfield should have revisited its proposed placement or at least offered her more support during the transition, which the school declined to do. *Id.* ¶¶ 25-27.

Over the summer of 2023, V.L. continued to suffer from worsening symptoms and experienced a psychotic break which caused increased ideations of self-harm and suicide. *Id.* ¶¶ 28, 29. M.L. reached out to Smithfield regarding her daughter's worsening condition but did not receive a response. *Id.* ¶ 30. On July 17, W.L. and M.L. sent a unilateral placement notice to Smithfield to inform the school of their intention to place V.L. at St. Andrew's School, a smaller private school focused on special education. *Id.* ¶ 31. Director Crudele responded on August 4 that the school's goal is to prepare students for "'real world' experiences as they mature" and expressed concern that St. Andrews may not be as equipped to handle V.L.'s needs. *Id.* ¶ 32.

Following an IEP meeting, Dr. Pamela Potemri recommended that V.L. be placed at St. Andrew's with outside mental health support to be provided by the

3

district. *Id.* ¶ 34, 35. The defendants rejected this plan and did not offer any additional support to aid with V.L.'s impending transition to Smithfield High School. *Id.* ¶¶ 35, 36. Shortly after, V.L. was admitted to Bradley Hospital. *Id.* ¶ 37. After another meeting with Dr. Potemri and V.L.'s family on September 20, the defendants agreed that Smithfield High School was not an appropriate placement and recommended an outside day program. *Id.* ¶ 38, 39. She was hospitalized again from September 29 to October 10, then attended Bradley's residential program until October 25. *Id.* ¶ 42. V.L.'s mental condition had deteriorated so much that a day program was no longer a viable option, according to her treatment team at Bradley. *Id.* ¶ 46. Dr. Steiner, who was part of V.L.'s treatment team at Bradley, opined that she required a residential educational placement "with round the clock supervision" because "the symptoms associated with her [Reactive Attachment Disorder] must be the primary focus due to the chronic risk of self-harm including suicide." *Id.* Still, the defendants maintained that V.L. could be adequately served through a clinical day program at Bradley. *Id.* ¶ 47.

V.L.'s mental condition continued to decline, so her parents placed her at an out-of-state program at Embark, at their own expense. *Id.* ¶¶ 48, 49. Smithfield's position remained that V.L.'s needs could be met at the Bradley School and that it was not required to provide a residential school setting for V.L. under the IDEA or Section 504 because that type of placement was the responsibility of the Department of Children, Youth, and Families. *Id.* ¶¶ 52-54.

4

V.L.'s parents sued to obtain a residential placement for V.L. under the IDEA, compensatory educational services, and compensation for damages sustained due to Smithfield's failure to provide accommodations to V.L. (ECF No. 1.) The plaintiffs allege that based on Smithfield's discrimination against their daughter, they have "suffered extensive damages, including but not limited to exacerbation of V.L.'s mental health condition, increased isolation for V.L., and disruption to the parent-child relationship." *Id.* ¶ 64. They have also suffered "financial harm, as well as emotional distress, personal inconvenience, worry, [and] loss of enjoyment of life." *Id.* ¶ 65. They also allege that Smithfield's actions "were done with conscious disregard for plaintiff's [sic] and V.L.'s legal rights [, and] were wicked and wanton, and for the good of society must be punished." *Id.* ¶¶ 66-67.

## II.   MOTION TO DISMISS STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court accepts the complaint's "well-pleaded factual allegations" and takes "all reasonable inferences in favor of the non-moving party." *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022) (quoting *McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017)). The dismissal of a complaint for failure to state a claim is appropriate when "the complaint does not set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Lemelson v. U.S. Bank Nat. Ass'n*, 721 F.3d 18, 21 (1st Cir. 2013) (quoting *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 384 (1st Cir. 2011)). In other words, "to survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### III.   DISCUSSION

#### A.   Count One: Section 504 of the Rehabilitation Act and Americans with Disabilities Act

In Count One, the plaintiffs allege that Smithfield discriminated against their daughter, V.L., based on her mental health disability and that the school failed to provide reasonable accommodations, denying her access to education under Section 504 and the ADA.[1]  (ECF No. 1 ¶¶ 57, 58, 61-63.)

The defendants insist that the plaintiffs' claims under Section 504 and the ADA should be dismissed because there is no cognizable claim for relief.  (ECF No. 11-1 at 4.)  Indeed, the defendants point out that neither punitive nor compensatory damages for emotional distress are available as remedies under Section 504 or the ADA.  *Id.* at 1.  Likewise, they argue, injunctive relief, such as compensatory education and reimbursement for tuition expenses, is not available unless a plaintiff exhausts their administrative remedies under the Individuals with Disabilities

---

[1] While the defendants argue that Count One should be dismissed with respect to Director Crudele because liability under Section 504 only extends to programs that accept federal funds, and not individuals, Count One is only directed at Smithfield, while Count Two, under RICRA, names both Director Crudele and Smithfield as defendants.  *See* ECF No. 1 ¶¶ 59, 60, 73.

Education Act ("IDEA"), which W.L. and M.L. have not done yet.[2]  The Court addresses each issue in turn.

### 1. Emotional Distress Damages

To start, the defendants argue that Count One must fail because emotional distress damages are precluded in private actions to enforce Section 504 under *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 222 (2022). And courts have similarly held that emotional distress damages are not available under the ADA because 42 U.S.C. § 12133 looks to the "remedies, procedures, and rights" set forth in the Rehabilitation Act. (ECF No. 11-1 at 4.) In response, the plaintiffs argue that *Cummings* does not apply to their ADA claim as Section 504 and the ADA were enacted "at different times, for different reasons." (ECF No. 13 at 16.) They maintain that as a matter of statutory construction, Congress knew that the state of the law when it enacted the ADA and so this Court should look to 42 U.S.C. § 1983 to fill in the gaps of the ADA. *Id.* at 17. They also argue that Section 504 is a Spending Clause

---

[2] The Court takes judicial notice of the plaintiffs' pending administrative proceeding, a special education due process case under Section 1415 of the IDEA. Under Rule 12(b)(6), the Court considers the complaint, attached exhibits, "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011); *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003). "The court may judicially notice a fact that is not subject to reasonable dispute because it is generally known within [the court's] jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This includes "documents the authenticity of which [is] not disputed by the parties," *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993), and "official public records." *Freeman v. Town of Hudson*, 714 F.3d 29, 36–37 (1st Cir. 2013).

statute, while the ADA is an antidiscrimination statute that applies to any "public entity" and not just those receiving federal funds. *Id.* at 16.

The Supreme Court has held that emotional distress damages are not recoverable in private actions to enforce the antidiscrimination provisions of the Rehabilitation Act. *Cummings*, 596 U.S. at 222. Federal laws enacted under the Spending Clause, like the Rehabilitation Act, do not allow for emotional distress damages because recipients of federal funding could not consent to be subject to damages for emotional distress, which are traditionally not available for breach of contract actions. *Id.* at 221-22. Since *Cummings*, other district courts have held that the ADA similarly does not allow for emotional distress damages. *See Brown v. Zeta Charter Sch.*, No. 23 CIV. 5593 (DEH), 2024 WL 4265691, at \*\*4-5 (S.D.N.Y. Sept. 23, 2024) ("because the Complaint only seeks damages for emotional harm, it fails to state claim under the ADA or Rehabilitation Act"); *A.S. v. Mamaroneck Union Free Sch. Dist.*, No. 21 Civ. 6937, 2024 WL 308211, at \*6 n.6 (S.D.N.Y. Jan. 26, 2024) ("[C]ourts in this Circuit have held, after *Cummings*, that emotional distress damages are not available under the ADA or the Rehabilitation Act.")

The plaintiffs maintain that *Cummings* does not apply to their ADA claim because that case concerned emotional distress damages under Section 504, which is a Spending Clause statute, Title II of ADA expressly incorporates the remedies available under the Rehabilitation Act. *See* Americans with Disabilities Act of 1990 § 203, 42 U.S.C. § 12133; *see also Doherty v. Bice*, 101 F.4th 169, 173-74 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 381 (2024) (holding that emotional distress damages

8

were unavailable in student's action alleging that state university administrators violated ADA when they issued no-contact orders against him). In *Doherty*, the Second Circuit reasoned that although the ADA was not Spending Clause legislation, Title II of ADA expressly incorporated remedies available under Rehabilitation Act, and such damages were not available under Rehabilitation Act. *Id.* at 173-74. While the Supreme Court and the First Circuit have not yet decided whether emotional distress damages are available under ADA, the Second Circuit's reasoning highlights Congress's clear intent that the remedies available under the ADA mirror that of the Rehabilitation Act. As a matter of statutory interpretation, this Court's task is to "apply faithfully the law Congress has written," and not to "replace the actual text with speculation as to Congress'[s] intent." *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 150 (2023) (cleaned up).

Indeed, Title II of the ADA § 12133, expressly points to Section 504 for "remedies, procedures, and rights" meaning that Congress intended that the remedies in the ADA borrow those of Section 504, rather than another statute such as Section 1983. *See Barnes v. Gorman*, 536 U.S. 181, 189 n.3 (2002). The plaintiffs take issue with the fact Section 504 is based on the Spending Clause, but the plain language in the ADA's borrowing statute, Section 12133, "make[s] discussion of the ADA's status as a 'non Spending Clause' tort statute quite irrelevant." *Id.* Thus, the Court sees no reason to interpret the ADA differently than it interprets Section 504. Therefore, the plaintiffs are barred from seeking emotional distress damages.

### a. Compensatory Damages Related to V.L.'s Psychiatric Hospitalization

While the plaintiffs attempt to cast their claim for the costs of V.L.'s psychiatric hospitalization as compensatory damages for her mental health treatment, rather than emotional distress damages, these costs are not related to any physical injury V.L. sustained based on the defendants' wrongdoing and instead resemble emotional distress damages, unavailable under Section 504 or the ADA.

In *Doe v. City of Pawtucket*, this Court refused to allow a plaintiff to bring a claim for emotional distress damages under Section 504 and instead held that they could only obtain compensatory damages for medical damages that arose from "the medical examination and treatment and physical harm the plaintiff might have sustained during her sexual assault." 633 F. Supp. 3d 583, 589-90 (D.R.I. 2022). Reasoning that "[t]he non-medical expense, non-emotional distress damages requested in the complaint—psychological damage, post traumatic syndrome, and loss of enjoyment—resemble varying forms or descriptions of emotional distress," this Court rejected the plaintiff's argument that they sought compensatory damages. *Id.* at 591.

In this case, V.L.'s parents have not alleged that she suffered any physical injuries caused by Smithfield's wrongdoing. Though she was hospitalized due to her worsening mental condition—no doubt exacerbated by the anticipated transition to Smithfield High School—her psychiatric treatment is not related to any physical harm caused by Smithfield or related medical expenses. So, like in *Doe v. City of Pawtucket*, here, the plaintiffs' claim for compensatory damages related to V.L.'s

psychiatric hospitalization resembles—and are proxies for—emotional distress damages, which are not available under Section 504 or the ADA. *Id.* at 589-91.

### 2. Equitable Relief

Next, the plaintiffs ask for injunctive relief. (ECF No. 1 at 9.) In response, the defendants claim that to obtain injunctive relief in the form of compensatory educational services or tuition reimbursement, IDEA requires that they first exhaust their administrative remedies. (ECF No. 11-1 at 5.)

When a child is denied a free appropriate public education ("FAPE"), under IDEA, their parent may bring a due process action against the local educational agency before a hearing officer. *See Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 390 (2017); 20 U.S.C. § 1415(f)(1)(A), (g). From there, the hearing officer may award equitable relief in the form of compensatory education and reimbursement of educational expenses. *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369-70 (1985). "Compensatory education consists of 'future special education and related services to ensure or remedy a past denial of FAPE.'" *Roe v. Healey*, 78 F.4th 11, 16 (1st Cir. 2023) (cleaned up). While the "[r]eimbursement of educational expenses is limited to money spent by parents for education-related expenditures that the state ought to have borne.'" *Id.* On the other hand, compensatory damages are not available under IDEA. *Id.*

When a plaintiff is seeking relief that is also available under IDEA, they must first exhaust the administrative procedures under that statute, even if they are not bringing a claim directly under IDEA. *See* 20 U.S.C. § 1411. When determining

11

whether a plaintiff in a suit brought under a statute other than IDEA seeks relief for the denial of a FAPE, such that the plaintiff is required to exhaust IDEA's remedies, the court should look to the crux, or the gravamen, of the plaintiff's complaint, "setting aside any attempts at artful pleading." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 169 (2017). The Supreme Court has further clarified that IDEA's exhaustion requirement does not apply when the relief sought was not a remedy the IDEA provides. *See Perez*, 598 U.S. at 143 (holding that student was not required to exhaust administrative procedures under IDEA before seeking relief in the form of compensatory damages under the ADA, because student's ADA complaint sought only compensatory damages, a remedy that IDEA did not supply).

In this case, the plaintiffs have not made any viable claim for compensatory damages, meaning that they are required to exhaust the administrative procedures before seeking injunctive relief also available under IDEA. Indeed, examining the gravamen of the Complaint, the plaintiffs have based their case on Smithfield's denial of a FAPE to V.L. by alleging that the school failed to provide reasonable accommodations and discriminated against her due to her mental health disabilities. (ECF No. 1 ¶¶ 62, 63.) Unlike *Perez*, where the student sought compensatory damages and the Supreme Court reasoned he was not required to exhaust administrative remedies, the plaintiffs here have not made any cognizable claim for compensatory damages. *Perez*, 598 U.S. at 143. The plaintiffs' claimed damages related to V.L.'s psychiatric treatment are emotional distress damages, dressed up as compensatory relief, so the Court disregards this attempt at "artful pleading." *Fry*,

12

580 U.S. at 169. Consequently, the plaintiffs needed to exhaust their administrative remedies before seeking injunctive relief that could be awarded by the hearing officer in the pending IDEA proceeding.

Accordingly, to the extent that the plaintiffs seek injunctive relief, those claims are DISMISSED WITHOUT PREJUDICE.

### 3. Punitive Damages

In Count One, the plaintiffs also allege that Smithfield's actions "were wicked and wanton, and for the good of society must be punished" and ask for punitive damages under Section 504 and the ADA. (ECF No. 1 ¶ 9.) But punitive damages are not a cognizable remedy under either Section 504 or the ADA. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act"); *see also Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 28 (1st Cir. 2006) ("[t]he law is equally clear that no punitive damages are available under [the ADA]"). Thus, the plaintiffs have failed to plausibly allege punitive damages under Section 504 or the ADA.

For all these reasons, the plaintiffs have failed to state a claim under Section 504 and the ADA. As such, Count One is DISMISSED with prejudice except to the extent that the plaintiffs seek injunctive relief, those claims are DISMISSED without prejudice.

### B.     Count Two: Rhode Island Civil Rights Act

Having dismissed the plaintiffs' claims under Section 504 and the ADA, the plaintiffs' only remaining claim is based on state law under RICRA (Count Two).

The Court may "decline to exercise supplemental jurisdiction" over remaining claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  Following dismissal of "all federal claims on the pleadings," it is "perfectly reasonable" to dismiss remaining state-law claims. *Rossi v. Gemma*, 489 F.3d 26, 39 (1st Cir. 2007); *see also Rodriguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").

In a case such as this one, where the federal claims that gave rise to jurisdiction are dismissed, "it is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims unless doing so would serve 'the interests of fairness, judicial economy, convenience, and comity.'" *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017) (citation omitted). With that in mind, the Court finds that these interests do not favor retaining jurisdiction over the plaintiffs' remaining RICRA claim. *See Camelio v. Am. Fed'n,* 137 F.3d 666, 672 (1st Cir. 1998); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (cleaned up) (explaining that "needless decisions of state law" in federal court "should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-

14

footed reading of applicable law."). Similarly, the interests of fairness, judicial economy, and convenience all weigh against retaining jurisdiction over the RICRA claim because this case is at an early stage, there would be little prejudice to the parties, and state courts are better equipped to handle any questions of state law that remain. *See Camelio*, 137 F.3d at 672.

As such, Count Two is DISMISSED WITHOUT PREJUDICE.

## IV.   CONCLUSION

For the reasons above, the defendants' Motion to Dismiss (ECF No. 11) is GRANTED. Count One is DISMISSED with prejudice except for any claim for equitable relief, which is DISMISSED without prejudice, and Count Two is DISMISSED without prejudice.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

July 11, 2025